IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| HEATHER T.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br> Defendant. | Civil No.: 3:17-cv-00469-JE <br><br> OPINION AND ORDER |

George Wall
1336 E. Burnside Street, Suite 130
Portland, OR 97214

        Attorney for Plaintiff

Billy J. Williams, U.S. Attorney
Renata Gowie, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

Heather Griffith
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

        Attorneys for Defendants

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

OPINION AND ORDER – 1

JELDERKS, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff requests the Court remand this action to the Social Security Administration (the Agency) for further proceedings.

For the reasons set out below, the Commissioner's decision is reversed, and this action is remanded for further proceedings.

## Procedural Background

Plaintiff filed applications for SSI benefits and a period of disability and DIB on March 11, 2013, alleging she had been disabled since April 15, 2010. After her claim was denied initially and upon reconsideration, Plaintiff requested an administrative hearing.

On November 5, 2015, a hearing was held before Administrative Law Judge (ALJ) Paul Robeck. Plaintiff and Richard Hincks, an impartial vocational expert (VE), testified at the hearing. Plaintiff was represented by counsel.

In a decision dated November 30, 2015, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

On January 26, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1980 and was 35 years old at the time of the ALJ's decision. Plaintiff has a high school education and obtained an Associate's Degree in Science and General

Studies. She has past relevant work as a property manager.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is

not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*.

### **ALJ's Decision**

As a preliminary matter, the ALJ found that Plaintiff met the insured status requirements through December 15, 2015.

At Step One, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 15, 2010, the alleged onset date.

At the second step, the ALJ found that Plaintiff had the following severe impairments: "obesity; fibromyalgia; and mental conditions variously described as mild neurocognitive disorder, major depressive disorder, post-traumatic stress disorder ("PTSD"), obsessive-

compulsive disorder, borderline personality disorder, undifferentiated somatoform disorder, and polysubstance abuse." Tr. 18.

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925, 416.926).

Before proceeding the to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the functional capacity to perform medium work except that Plaintiff should not climb ladders, ropes or scaffolding; should avoid concentrated exposure to vibration, fumes, odors, dusts, and hazards; is limited to incidental public contact; should not work as part of a team; and is limited to unskilled work. Tr. 23. In making his determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.

At Step Four of the disability analysis, the ALJ found that Plaintiff was not able to perform her past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited hospital housekeeper, and linen room worker as representative of the work Plaintiff could perform. Having concluded that Plaintiff could perform other work, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act from April 15, 2010 through the date of his decision.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by

reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. §405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred by failing to consider the majority of the medical evidence and by improperly rejecting the opinion of treating Psychiatric Mental Health Nurse Practitioner (PMHNP), Timothy Lafolette.

### I. Opinion Evidence from PMHNP Lafolette

PMHNP Timothy Lafolette treated Plaintiff and provided medication management beginning in early 2014. Plaintiff argues that the ALJ improperly rejected Lafolette's November

9, 2015 opinion. As a PMHNP, Lafolette is an "other source" whose opinion the ALJ may discount by providing "germane reasons" for doing so. 20 C.F.R. § 416.913(d); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff argues that the ALJ did not read Lafolette's opinion because the ALJ stated in his decision that the "reported opinion is not in the medical evidence of record." Tr. 33. Plaintiff argues that the ALJ cannot evaluate an opinion he has not read and can, therefore, not provide legitimate reasons for rejecting that opinion. On this issue some clarification is necessary.

The "opinion" discussed by the parties is contained in a Psycho-Diagnostic Evaluation by Dr. Karla Rae Causeya dated October 8, 2015, in which she writes that she spoke with Lafolette and:

> He stated that [Plaintiff's] symptoms of PTSD seem to be primary and severe. He indicated his opinion that [Plaintiff] is not able to work due to the severity of her symptoms. He indicated her symptoms would be triggered by working in proximity to others. He also indicated her symptoms may prevent her from attending work.

Tr. 1056. Later in the record is a letter written by Lafolette dated November 9, 2015, in which he writes:

> This letter is to confirm that I have read the psychological evaluation by Karla Rae Causeya, PsyD regarding the mental health symptoms and mental health history of [Plaintiff]. Based on my work with [Plaintiff], this report appears to be accurate, and I agree with the assessment and professional opinions of Dr. Causeya regarding [Plaintiff's] mental health symptoms and prognosis.

Tr. 1225. In sum, the record contains the second-hand report of an opinion expressed by Lafolette to a mental health evaluator, Dr. Causeya, and Lafollette's subsequent written agreement with the conclusions reached by that evaluator. In light of this, the Court concludes that it was not completely inaccurate for the ALJ to assert that Lafolette's opinion was not in the record. The substance of that opinion, such as it was, appeared only through Dr. Causeya's

report. Lafolette's November 2015 letter expresses only an agreement with the assessment and professional opinions provided by Dr. Causeya and not an independent opinion in and of itself.

The ALJ did note that "if the opinion were documented elsewhere besides Dr. Causeya's report it would be given little weight" as inconsistent with the substantial weight of the evidence and reliant on Plaintiff's subjective allegations, which were found to be unpersuasive. Tr. 33. Thus, it is clear that the ALJ was aware of Lafolette's opinion. Nevertheless, because the Lafolette "opinion" supplied no basis, other than his 18-month treatment relationship with Plaintiff, the ALJ could not reasonably discount the statement as reliant on Plaintiff's subjective complaints. In addition, for the reasons discussed below, lack of consistency with the record as a whole was also not, in this case, a germane reason for rejecting the opinion.

Although the Court is not convinced the ALJ was required to assign weight to Lafolette's "opinion" in light of the way it appeared in the record, it does conclude that the ALJ's reasons for assigning it little weight were not legally sufficient. Because, as discussed below, the Court is remanding this case for further proceedings, it instructs the ALJ address this issue on remand.

## II. **Evaluation of Medical Evidence**

In making a disability determination, the ALJ must consider all relevant evidence in the record. § 416.920(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled."); *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)(ALJ must consider the evidence as a whole in arriving at a conclusion based on substantial evidence). Whether substantial evidence supports an ALJ's finding "is determined from the record as a whole, with the court weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). The ALJ "need not discuss all evidence presented to [him]. Rather, [he] must explain

why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)(quoting *Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir. 1981). The Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40. However, an ALJ cannot "cherry-pick" evidence to support his findings. *See Holohan*, 246 F.3d at 1207(holding that an ALJ erred by selectively relying on some entries in a claimant's records while ignoring "the many others that indicated continued, severe impairment.").

The Commissioner argues that Plaintiff has only offered her own interpretation of the evidence and this Court must uphold the ALJ's conclusion in a situation where the evidence is susceptible to more than one rational interpretation. However, this case presents not a situation where the ALJ has offered a rational interpretation with which the Plaintiff disagrees, instead, the ALJ has failed to rationally interpret the record by omitting from his decision almost any discussion of the considerable evidence that detracts from his conclusions.

In his discussion of the evidence and in support of his conclusions, the ALJ noted that there was no evidence that Plaintiff sought significant mental health treatment from her alleged onset date until early 2012, Tr. 24; that she was treated during this period by a primary care provider and not a mental health professional, id.; that in 2012 Plaintiff requested a refill of her anxiety medication but stated she could wait a month to have it refilled, id.; that in 2012 Plaintiff reported she was consistently successful at maintaining employment and attending school; and that she was routinely observed to be pleasant by her primary care providers despite her homelessness situation and reports of anger issues. Tr. 25, 653, 669, 767, 966.

The ALJ noted that Plaintiff appeared to have no significant mental health treatment from April to August 2012. He noted that although Plaintiff saw a therapist and PMHNP on a regular

basis starting in late 2012, Plaintiff did not seek nor was referred to crisis or additional mental health treatment during times she experienced increased social stressors in 2012, late 2013 and early 2014. Tr. 26, 804-806, 1174-1175, 1177, 1182. The ALJ also cited Plaintiff's lack of care by a psychiatrist; her ability to work for several years prior to her alleged onset date; and treatment notes that show Plaintiff had adequate hygiene, a euthymic affect, good attention and logical thought process.

In support of his conclusions, the ALJ also noted that Plaintiff had attended a conference, was attending classes at PSU, had joined an environmental group and had reported in May 2015 that she was "doing well in school and connecting with other students and her professors." Tr. 27, 29, 1123.

As to conflicting evidence, other than mention of an April 2012 report by Plaintiff of intrusive thoughts, anxiety and suicidal thoughts with plans, Tr. 25, 650; and an April 2015 report that Plaintiff poured water over a man's head for leaving dogs in the car, Tr. 27, 650; the ALJ's decision largely ignored the copious treatment notes that discuss Plaintiff's mental health and treatment plan.

The record is replete with treatment notes and mental health assessments that discuss Plaintiff's feelings of anger and depression and the resulting impact on her daily activities. The record reflects that starting in 2004, Plaintiff received mental health and other support services through the Native American Rehabilitation Association (NARA). Tr. 1005. From 2010 to 2012 Plaintiff received physical and mental health treatment from her primary care physician at NARA. Tr. 532-536, 624-649. Between 2012 and 2015 Plaintiff's mental health treatment included individual and group therapy sessions, medication management and case management. Tr. 1011-1012, 1016-1018, 1020, 1022, 1078. Consistently throughout the NARA treatment

notes, Plaintiff was prescribed numerous and multiple psychotropic medications including Citalopram (Celexa), Doxepin, and Hydroxyzine. Tr. 602. In September 2015, two months prior to her administrative hearing, Plaintiff's prescribed medications included Bupropion (Wellbutrin), Clonazepam, Prazosin, Lurasidone HCL (Latuda), Duloxetine (Cymbalta), and Gabapentin. Tr. 1027-1028.

The record also contains reports from numerous counseling sessions in which Plaintiff described and her counselors assessed her with feelings of anger, depression and suicidal ideation and resultant outbursts, nightmares and negative social interactions. See e.g. Tr. 897, Apr. 17, 2012 (feeling angry, "not having a good day," appeared "on the verge of a violent episode"); Tr. 896, Apr. 19, 2012 (depressed, struggling with anger, expressed "intense anger and hatred" toward others and self); Tr. 881, Jan. 9, 2013 (doing well but had many incidents of anger in the past two weeks); Tr. 875, Feb. 6, 2013 (very depressed, thoughts of "wanting to be dead," reported episodes of self-harm); Tr. 872, Feb. 20, 2013 (not doing well, experiencing paranoia); Tr. 863, Mar. 29, 2013 (reported acting out in a "mean" way to members of group session, "flooded with negative emotions" appeared to dissociate during session); Tr. 845, May 31, 2013 (anxious and depressed, visible superficial cuts on arm from cutting on self); Tr. 833, July 11, 2013 (Plaintiff "angry, tearful, fearful"); Tr. 811, Sep. 12, 2013 (anxious, upset, tearful, experiencing more nightmares); Tr. 1180, Dec. 11, 2013 (depressed and sad, stated "I want to die."); Tr. 1173, Jan. 28, 2014 (anger has become more intense, angry, frustrated, irritated); Tr. 1172 (reported PTSD being triggered at a UA lab resulting in Plaintiff screaming and being escorted out of the building by security); Tr. 1165, May 2, 2014 (ongoing stress, pain, depression and anxiety); Tr. 1152, July 15, 2014 (Plaintiff "very tearful and dissociating"); Tr. 1142, Sep. 10, 2014 (reported nightmares, increased symptoms of anger, moderately depressed and having

mild suicidal ideation); Tr. 1131, Feb. 24, 2015 (Plaintiff reported spitting in a woman's face on a trip to the beach, throwing out and stranding members of her party who rode in her car because she was angry with them; unable to process anger in a healthy way); Tr. 1125, April 22, 2015 (Plaintiff "coping with her PTSD in an unproductive and unsafe manner"); Tr. 1115, June 15, 2015 (Plaintiff experiencing intensified anxiety and depression, "catastrophizing the future" causing difficulties with daily functioning); Tr. 1104, Sep. 22, 2015 (tearful and depressed).

Mental health assessments also consistently document Plaintiff's anger, depression, impulsivity and unsafe actions. In a January 2012 NARA Mental Health Assessment report, Plaintiff described symptoms of anger, panic attacks, impulsivity, sleep disturbances, depression and anxiety. Tr. 1013-1016. The report also documents Plaintiff's substance abuse and her incarceration for assault charges stemming from an altercation with her mother. Id. A May 8, 2013 NARA Mental Health Assessment noted suicidal ideation, incidents of self-harm and expressions of a desire to hurt others. NARA assessed that Plaintiff presented a moderate risk for serious harm to others. Tr. 854-856. Anger, suicidal ideation, depression, nightmares, dissociation, thoughts of hurting others, and anxiety are also documented by NARA in annual Mental Health Assessments in July 2014 and September 2015. Tr. 1005-1011. The Court cites here only some examples from the more than 1200-page record that the ALJ largely ignored in his decision. The ALJ's selective references to those portions of the record that supported his conclusion was error.

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the record that bolster his findings. *See Gallant v. Heckler,* 753 F.2d 1450, 1456 (9th Cir.1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion). It was improper for the ALJ to selectively reference evidence

supporting his conclusions, while ignoring other records contradicting that conclusion. Id. Here, the ALJ committed harmful error in failing to address significant portions of the record that are clearly inconsistent with both the ALJ's conclusions and the evidence upon which he relied in forming those conclusions. *Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th Cir. 1986)(ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his own interpretation thereof, and making findings.").

Furthermore, because the ALJ failed to properly evaluate the evidence there are issues that require resolution before a finding of disability can be made. Plaintiff's case is complicated by issues of credibility, substance abuse, the waxing and waning of her symptoms and other potentially significant factors that must be considered in context of the record as a whole. "[R]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009)). Accordingly, remand for further proceedings is appropriate.

On remand, the ALJ need not discuss each item of evidence, but the record should indicate that all evidence presented was considered. The ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his own interpretation thereof, and making findings.") *Cotton,* 799 F.2d at 1408. The ALJ must also explain why 'significant probative evidence has been rejected.'" *Vincent on Behalf of Vincent*, 739 F.2d at 1394–95. After proper consideration of the entire record, the ALJ should proceed through the sequential evaluation process and conduct any further proceedings as necessary in light of that consideration.

## Conclusion

For the reasons set forth above, the Commissioner's decision is REVERSED, and this action is REMANDED for further proceedings consistent with this Opinion.

DATED this 15th day of May, 2019.

    /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge